IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| **JULIA PULZONE, et al.,** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 1:22-cv-1363** |
| **KALEYRA, INC., et al.,** ) | |
| **Defendants** ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Julia Pulzone, Ipai "Terry" Hsiao, and John Canter ("Plaintiffs") have filed this complaint against their former employer, Kaleyra, Inc., and its former CEO, Dario Calogero ("Defendants"). In the Complaint, Plaintiffs allege that Defendants violated the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, by firing Plaintiffs in retaliation for expressing concerns that Defendants' proxy statements were inaccurate and misleading in violation of federal securities law. Plaintiffs also allege that Defendants breached the Plaintiffs' employment contracts by failing to pay severance benefits. In response, Defendants have filed a Motion to Partially [sic] Dismiss the Complaint and to Compel Arbitration (Dkt. 14). In the motion, Defendants challenge only two of the four counts in the Complaint. First, Defendants argue that Plaintiff John Canter's Sarbanes Oxley claim in Count I of the Complaint must be dismissed because Canter has failed to allege any facts showing that he was terminated in violation of the Sarbanes-Oxley Act. Second, Defendants argue that Plaintiff Julia Pulzone must arbitrate her breach of contract claim in Count II because Pulzone's employment agreement contains a binding arbitration clause.

1

Defendants' motion has been fully briefed and was argued orally on Friday, May 5, 2023, and it is therefore now ripe for disposition. For the reasons stated from the bench and recited here, Defendants' motion must be granted in part and denied in part.

**I.**

The facts alleged in Plaintiff's Complaint, which must be assumed to be true solely for the purposes of resolving Defendants' Motion to Dismiss,[1] may be summarized as follows.

- Defendant Kaleyra, Inc. is currently a publicly traded corporation engaged chiefly in computer processing and data preparation. Defendant Dario Calogero was the CEO of Kaleyra, Inc. at all relevant times.

- All three Plaintiffs were employees of Kaleyra until December 2019. Specifically, Pulzone was Kaleyra's Chief Financial Officer, Hsiao was the Head of Strategy, and Canter was the Director of Financial Planning and Analysis.

- Until 2018, Kaleyra was a private corporation operating in Italy and India. In 2018, Kaleyra entered the U.S. market, opened an office in Vienna, Virginia, and decided to become a publicly traded corporation. In September 2018, Kaleyra hired Hsiao as the Head of Strategy to organize and manage Kaleyra's efforts to go public.

- Rather than using an initial public offering to go public, Kaleyra decided to merge with a special purpose acquisition company (a "SPAC") named GigCapital, Inc. SPACs are shell companies created solely for the purpose of raising money from investors in order to merge the SPAC with a private company and thereby convert the private company to a public company.

- SPACs are subject to federal securities laws and shareholders of SPACs must receive a copy of proxy statements when their votes are solicited for a merger. The proxy statement must disclose all material facts about the issues on which the stockholders are asked to vote. Shareholders of SPACs also have the right to redeem their shares for cash ahead of mergers. If too many shareholders redeem their SPAC shares prior to a merger, the SPAC may not have enough funds to complete the merger.

- On February 22, 2019, GigCapital, Inc. publicly announced its agreement to merge with Kaleyra and take Kaleyra public. When the merger was announced, the press release stated that Defendant Calogero would serve as the CEO of Kaleyra, and that additional executives would be hired to operate Kaleyra.

- Soon thereafter, Kaleyra hired Pulzone to serve as the Chief Financial Officer. Pulzone entered into an employment contract with Kaleyra which promised certain payments once

---

[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the merger between Kaleyra and GigCapital was consummated. The contract also provided for certain severance benefits in the event Kaleyra terminated Pulzone without cause.

- Kaleyra also hired Canter as Director of Financial Planning and Analysis. In this role, Canter supported financial reporting activities led by Pulzone.

- At the time the merger was announced, GigCapital had approximately $145 million in cash on hand. Thereafter, and prior to the merger, many GigCapital shareholders exercised their right to redeem shares for cash, leaving GigCapital with only $40.8 million in cash.

- Before the merger, Defendant Calogero also entered into a series of forward share purchase agreements, which left GigCapital with only $2.3 million in cash. This cash deficit threatened Kaleyra's upcoming merger with GigCapital.

- Plaintiffs believed that this cash shortfall was material information that had not been disclosed in proxy statements as required by federal securities law. On multiple occasions, Plaintiffs expressed their concerns to Calogero. Specifically, the Complaint alleges that Hsiao and Pulzone participated in a conference call with Calogero in September 2019, during which Hsiao and Pulzone shared their concerns with Calogero and also shared financial information collected by Canter with Calogero. Pulzone and Hsiao continued to share concerns with Calogero about the proxy statements throughout October 2019, and Hsiao even contacted an SEC commissioner for advice about the contents of the proxy statements.

- On December 12, 2019, all three plaintiffs were fired. Pulzone was not offered compensation or severance payments, which in her view were required by her employment contract.

Compl., Dkt. 1 at 4–19.

The Complaint asserts four causes of action. First, Plaintiffs allege that Defendants violated the Sarbanes-Oxley Act's anti-retaliation provisions. The remaining three counts are for breach of Plaintiffs' employment contracts. Defendants have now filed a partial Motion to Dismiss and partial Motion to Compel Arbitration. With respect to the Motion to Dismiss, Defendants seek to dismiss only Canter's Sarbanes-Oxley Act claim, but do not seek dismissal of Hsiao's or Pulzone's Sarbanes-Oxley Act claims. With respect to the Motion to Compel Arbitration, Defendants have moved only to compel arbitration of Pulzone's breach of contract claim. For the reasons stated below, Defendant's Motion to Dismiss will be denied with respect

to Canter's Sarbanes-Oxley Act claim, and Defendant's Motion to Compel Arbitration of Pulzone's contract claim will be granted.

## II.

To begin with, Defendants' Motion to Dismiss Canter's Sarbanes-Oxley Act retaliation claim must be denied. In order to state a prima facie claim under the Sarbanes-Oxley Act, a plaintiff must allege that "(1) she engaged in a protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 344 (4th Cir. 2014). Because the Complaint sufficiently alleges facts supporting each of these elements, Canter's Sarbanes-Oxley Act claim survives at this threshold dismissal stage.

First, Canter has alleged facts that plausibly show that Canter engaged in a protected activity under the Sarbanes-Oxley Act. As the Fourth Circuit has explained, the Sarbanes-Oxley Act "protects whistleblowers of publicly-traded companies by prohibiting employers from retaliating against employees who have provided information about potentially illegal conduct." *Id.* The statute defines protected activity to include "any lawful act done by the employee" to "provide information [or] cause information to be provided" regarding potential violations of securities law to "a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a)(1). The Complaint alleges that Canter provided financial information about Kaleyra and GigCapital—including the companies' inability to pay for merger expenses—to Hsiao and Pulzone, who in turn provided the information to Defendant Calogero. *See* Compl. ¶¶ 53–54. The Complaint specifically notes that Hsiao informed Calogero that "unaccounted for expenses might be in the range of $5 million to $8 million," and that "Mr. Canter assisted in obtaining this

information as well as the other material information" disclosed to Calogero. *Id.* ¶ 54. The Complaint also alleges that Pulzone, "with assistance provided by Mr. Canter," told Defendants that she questioned the accuracy of financial information disclosed in proxy statements. *Id.* ¶ 58. Thus, Canter has plausibly alleged that he "cause[d] information to be provided" to Defendants, which satisfies the requirement for protected activity under the Sarbanes-Oxley Act. 18 U.S.C. § 1514A(a)(1).

The Complaint has also alleged facts that satisfy the second element for pleading a prima facie claim for retaliation under the Sarbanes-Oxley Act, namely that the employer "knew [the employee] engaged in protected activity." *Feldman*, 752 F.3d at 344.  Defendants have not challenged the Complaint for failure to allege facts relating to this element, as the Complaint clearly alleges that the Plaintiffs informed the Defendants about their concerns with the proxy statements in advance of the merger. *See, e.g.*, Compl. ¶¶ 53–54, 58. Thus, Canter has clearly alleged that Defendants had knowledge of the Plaintiffs' protected activity.

The third and fourth elements for stating a retaliation claim under the Sarbanes-Oxley Act—that the employee was terminated and the employee's protected conduct was a contributing factor in the termination—are also met here. The Complaint alleges that all three Plaintiffs were fired "because Plaintiffs had raised repeated concerns about Defendants' failure to disclose material information" and "to get rid of people who were making [Defendants'] lives difficult by pointing out uncomfortable truths." *Id.* ¶ 71. Furthermore, the Fourth Circuit has explained that a "contributing factor" in the employee's termination under the Sarbanes-Oxley Act is a standard that is "meant to be quite broad and forgiving" and that "[t]emporal proximity between the protected activity and the adverse action is a significant factor" in considering causation under the statute. *Feldman*, 752 F.3d at 348, 350. Here, Canter has satisfied the requirements for this

element by pleading that he was fired shortly after assisting Pulzone and Hsiao with reporting their concerns to Defendant about planned merger, and that Defendants' decided to terminate Canter, Hsiao, and Pulzone in retaliation for raising concerns.

Finally, Defendants argue that Canter's Sarbanes-Oxley Act claim fails because the Complaint does not allege facts supporting that Canter reasonably believed Defendants violated securities law. In this respect, the Sarbanes-Oxley Act requires that the employee "provide information" or "cause information to be provided" about an issue which "the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Defendants argue that Canter's Sarbanes-Oxley Act claim must be dismissed because the Complaint is silent as to Canter's beliefs about whether Defendants violated securities law. But this argument plainly fails because the Complaint alleges that "Plaintiffs reasonably believed that they were engaged in a protected activity," that Canter assisted Pulzone in determining that "merger expenses of $12.8 million disclosed in the second proxy statement were incorrect," and that Pulzone and Canter worked together in concluding that Defendants would not be able to raise the additional money needed to complete the merger. Compl. ¶¶ 51–56, 58, 81. These allegations all support the inference that that Canter worked closely with Pulzone and that both believed Defendants violated securities laws through misrepresentations in proxy statements about available funding for the merger. Thus, the Complaint contains sufficient factual material to demonstrate that Canter reasonably believed Kaleyra was in violation of securities law. Accordingly, Defendants' Motion to Dismiss Canter's Sarbanes-Oxley Act claim must be denied.

## III.

Next, Defendants have moved to compel arbitration of Pulzone's breach of contract claim and seek an order staying Pulzone's contract claim pending resolution of the arbitration proceedings. In the Complaint, Pulzone argues that Defendants breached her employment agreement by failing to provide certain severance benefits and compensation required by Pulzone's employment contract. In response, Defendants argue that Pulzone's employment agreement contains a binding arbitration provision which states that "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be settled by binding arbitration in the State of Delaware." Ex. A to Def.'s Br. in Supp. of Mot., Dkt. 15-1 at 11.[2] Pulzone has not challenged the existence of the arbitration provision, but makes two arguments in opposition to Defendants' motion: (i) that Defendants are estopped from relying upon the arbitration provision because Defendants will argue during arbitration that the contract is unenforceable; and (ii) that arbitration of Pulzone's contract claim is barred by the Sarbanes-Oxley Act, which prohibits arbitration of claims arising under the statute.

### A.

Pulzone first argues that Defendants are estopped from enforcing the contract's arbitration provision because Defendants have stated that they plan to challenge the contract's enforceability during arbitration.[3] This argument is meritless. The Supreme Court has made clear that the enforceability of a contract's arbitration provision is a separate question from the

---

[2] Defendants have attached a copy of Pulzone's employment agreement as Exhibit A to Defendants' motion. Although Pulzone did not attach her employment contract to the Complaint, it can be considered here because the contract is "integral to and explicitly relied on in the complaint" and because "plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

[3] At the hearing, Defendants stated that during arbitration Defendants will take the position that Pulzone's employment contract is unenforceable and void *ab initio* due to changes Pulzone made to the agreement before the final contract was signed by Defendants.

enforceability of other provisions of the contract. Specifically, the Supreme Court has explained

that a "party's challenge to another provision of the contract, or to the contract as a whole, does

not prevent a court from enforcing a specific agreement to arbitrate" because "an arbitration

provision is severable from the remainder of the contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561

U.S. 63, 70–71 (2010) (internal quotation marks and citation omitted); *see also Nitro-Left Techs.,*

*LLC v. Howard*, 568 U.S. 17, 20–21 (2012) ("[W]hen parties commit to arbitrate contractual

disputes, it is a mainstay of the [Federal Arbitration Act's] substantive law that attacks on the

validity of the contract . . . are to be resolved by the arbitrator in the first instance."). Thus,

Pulzone's estoppel argument must be rejected.

## B.

Pulzone also argues that arbitration of her contract claim is barred by the Sarbanes-Oxley

Act. In this respect, the Sarbanes-Oxley Act provides that no "arbitration agreement shall be

valid or enforceable, if the agreement requires arbitration of a dispute *arising under this section.*"

18 U.S.C. § 1514A(e)(2) (emphasis added). Pulzone argues that because her breach of contract

claim involves similar facts to her whistleblower retaliation claim, this provision of the Sarbanes-

Oxley Act bars arbitration of the contract dispute. Yet this argument fails because the text of the

Sarbanes-Oxley Act is clear that only disputes "arising under" the statute itself are barred from

arbitration. *Id.* In other words, the Sarbanes-Oxley Act does not bar arbitration of claims based

on the same facts as Sarbanes-Oxley claims; only Sarbanes-Oxley Act claims themselves are

barred by the plain language of the statute. This conclusion is in accord with district courts from

various circuits which have considered and rejected Pulzone's argument that the Sarbanes-Oxley

Act prohibits arbitration of related state law claims.[4] Similarly, the Second Circuit has held that the anti-arbitration provision in the Sarbanes-Oxley Act does *not* bar arbitration of Dodd-Frank Act whistleblower claims, *even where* the Dodd-Frank claims "arise out of the same act of whistleblowing" as Sarbanes-Oxley Act claims. *Daly v. Citygroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019). As the Second Circuit has explained, "the language of the SOX anti-arbitration provision restricts its applicability to its own statutory scheme," and "reflects congressional intent to limit its terms to the claims arising under its particular statutory scheme." *Id.* at 424; *see also Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 492 (3d Cir. 2014) ("The Anti-Arbitration Provision [of the Sarbanes-Oxley Act] is expressly limited to a single category of disputes: those 'arising under *this* section,' meaning Section 1514A of the United States Code."). Thus, because Pulzone's breach of contract claim does not arise under the Sarbanes-Oxley Act, the statute's bar on arbitration does not apply and Defendants' Motion to Compel Arbitration must be granted.

Seeking to avoid this conclusion, Plaintiff argues that two district courts have concluded that the Sarbanes-Oxley Act *does* bar arbitration of state-law claims, including breach of contract claims, when the state law claims arise out of the same "nucleus of operative fact" as the Sarbanes-Oxley Act claims. *See Laubenstein v. Conair Corp.*, 2014 WL 6609164 (W.D. Ark. Nov. 19, 2014); *Stewart v. Doral Fin. Corp.*, 997 F. Supp. 2d 129 (D.P.R. 2014). Yet, these out-of-circuit, nonbinding decisions are unpersuasive here because they are devoid of any textual analysis of the relevant statutory phrase "arising under this section." 18 U.S.C. § 1514A(e)(2). Because the Sarbanes-Oxley Act limits its arbitration ban to claims "arising under" the statute

---

[4] *See Vuoncino v. Forterra, Inc.*, 2022 WL 868274, at *5 (N.D. Tex. Feb. 28, 2022) (holding that the Sarbanes-Oxley Act's anti-arbitration provision does not bar arbitration of state law claims), *report and recommendation adopted*, 2022 WL 865893 (N.D. Tex. Mar. 22, 2022); *Endresen v. Banc of Cal., Inc.*, 2018 WL 11399501, at *3 (C.D. Cal. Sep. 20, 2018) (same); *Wiggins v. ING U.S., Inc.*, 2015 WL 3771646 (D. Conn. June 17, 2015) (same).

itself, the Act does not forbid arbitration of other state law claims that do not arise under the Sarbanes-Oxley Act.

Moreover, arbitration of Pulzone's breach of contract claim is appropriate here because Pulzone's contract claim and the Plaintiffs' Sarbanes-Oxley Act claims are distinct and involve no intertwined issues. Pulzone's employment contract provides that Pulzone's severance benefits depend on whether Pulzone was discharged for "due cause" as defined by the contract. Ex. A to Def.'s Br. in Supp. of Mot., Dkt. 15-1 at 11. Thus, the arbitrator's decision will be limited to determining whether the employment contract is enforceable and if it is, whether Pulzone was discharged for "due cause." But as Defendants conceded both in their briefing and during oral argument, Defendants will *not* argue during arbitration that Pulzone was discharged for "due cause." The arbitrator's decision will therefore be limited only to determining whether the contract is enforceable. If the arbitrator determines that Pulzone's employment contract is enforceable, Pulzone will be entitled to the severance benefits specified in the employment contract for termination without "due cause" as the contract provides. Thus, because Defendants have conceded that they will not argue that Pulzone was terminated for "due cause" during arbitration, none of the determinations made during arbitration will in any way impact on, or overlap with, the issues ultimately to be decided in this proceeding, namely, whether Pulzone and the other Plaintiffs were terminated in retaliation for engaging in protected activity under the Sarbanes-Oxley Act.

In sum, Pulzone's breach of contract claim must be arbitrated. As all parties agree, the relevant employment contract contains an arbitration provision. Despite Pulzone's contentions to the contrary, Defendants are not estopped from relying upon that arbitration provision even though Defendants may challenge the enforceability of other portions of the contract during

arbitration. And the Sarbanes-Oxley Act's anti-arbitration provision does not bar arbitration of Pulzone's breach of contract claim, which does not arise under the Sarbanes-Oxley Act. Accordingly, Defendants' motion to compel arbitration must be granted, and Pulzone's breach of contract claim will be stayed pending arbitration.[5]

## C.

Although it is clear that Pulzone's breach of contract claim must be stayed pending arbitration, the question remains whether the other claims alleged in the Complaint, which are not subject to arbitration, should be stayed pending the arbitration of Pulzone's breach of contract claim. Plaintiffs do not want a stay of the entire case pending arbitration and would prefer to proceed with litigation in this Court, whereas Defendants request a stay of Pulzone's breach of contract claim pending arbitration. Thus, the Court must determine whether to stay the entire case pending arbitration or to proceed with the non-arbitrable claims. The Fourth Circuit has instructed that "[a] decision to stay related claims pending arbitration is a matter entrusted to the discretion of the district court." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 293 n.12 (4th Cir. 2007); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases . . . it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."). Here, it is appropriate to exercise this discretion and stay the entire case pending arbitration of Pulzone's breach of contract claim. Staying the entire matter will ensure that Pulzone is not unduly burdened by having to concurrently litigate in federal court and in arbitration. Moreover, staying the case for all parties will foster judicial

---

[5] As the Fourth Circuit has explained, the Federal Arbitration Act "requires a district court . . . to stay judicial proceedings involving issues covered by written arbitration agreements." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001) (citing 9 U.S.C. § 3).

economy and efficiency because it will allow all the Plaintiffs' related Sarbanes-Oxley claims to be heard together after arbitration has been completed, rather than in a piecemeal fashion as would occur if the case were only stayed with respect to Pulzone's claims.

This decision is consistent with that of other district courts in the Eastern District of Virginia which, when confronted with non-arbitrable claims along with arbitrable claims, have stayed the entire proceeding pending the resolution of arbitration proceedings. *See, e.g.*, *Meridian Imaging Sols., Inc. v. Omni Bus. Sols., LLC*, 250 F. Supp. 3d 13, 26–27 (E.D. Va. 2017) (staying non-arbitrable claims pending arbitration of related claims); *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 872–73 (E.D. Va. 2009) (same). Further, in the Sarbanes-Oxley Act context, district courts have exercised their discretion to stay the entire case, including non-arbitrable Sarbanes-Oxley Act claims, pending arbitration of causes of action related to plaintiffs' Sarbanes-Oxley Act claims. *See Anderson v. Salesforce.com, Inc.*, 2018 WL 6728015, at *3 (N.D. Cal. Dec. 21, 2008) (staying a plaintiffs Sarbanes-Oxley claim pending arbitration of a related state-law claim); *Hansen v. Musk*, 2020 WL 4004800, at *8 (D. Nev. July 15, 2020) (same). This authority supports staying the entire matter here pending resolution of arbitration proceedings for Pulzone's breach of contract claim.

Finally, to encourage a speedy resolution of this dispute for all parties, the stay will be limited in duration and will last only six months from the date of this Order. Although this Court cannot order that the arbitration proceedings finish within this time period, it is expected that arbitration of Pulzone's single breach of contract claim will be completed within six months. The parties are urged to complete promptly the arbitration proceedings during that time. However, to accommodate the interests of the non-arbitrating plaintiffs, the stay will be lifted after six months even if arbitration of Pulzone's contract claim has not yet been completed. In the event that the

parties have not completed arbitration after six months, the remaining, non-arbitrable claims will nonetheless go forward in this Court—namely, all three of the Plaintiffs' Sarbanes-Oxley Act claims as well as Hsiao and Canter's breach of contract claims.

**IV.**

In conclusion, Defendants' motion will be granted in part and denied in part. Specifically, Defendants' Motion to Dismiss Canter's Sarbanes-Oxley Act Claim will be denied and Defendants' Motion to Compel Arbitration of Pulzone's breach of contract claim will be granted. In order to foster judicial economy and encourage a speedy resolution of this dispute for all parties, the entire matter will be stayed for six months pending arbitration of Pulzone's breach of contract claim.

An appropriate Order will issue.

Alexandria, Virginia
May 16, 2023

/s/

T. S. Ellis, III
United States District Judge

13