IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JULIA PULZONE, *et al.*,
    Plaintiffs,

v.                                              Civil No. 1:22cv1363 (DJN)

KALEYRA, INC., *et al.*,
    Defendants.

### MEMORANDUM ORDER
### (Granting Plaintiffs' Motion to Exclude)

This matter comes before the Court on Plaintiffs' Motion to Exclude Testimony from Defendants' Expert Mitchell Gordon. (ECF No. 114 ("Motion to Exclude").) For the reasons stated below, the Court hereby GRANTS the Motion to Exclude.

### I.    BACKGROUND

This case arises from the merger of Kaleyra S.p.A., a privately held Italian company, and GigCapital, Inc., a publicly traded Special Purpose Acquisition Company ("SPAC"), to form Kaleyra, Inc. Plaintiffs Julia Pulzone, Ipai "Terry" Hsiao and John Canter allege that Defendants violated the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, by firing Plaintiffs in retaliation for raising concerns to senior Kaleyra, S.p.A. executives that Defendants made inaccurate, misleading and unlawful disclosures in the proxy statements leading up to this merger. Plaintiffs also allege that Defendants breached Hsiao's employment contract by failing to pay him equity compensation.[1]

The instant Motion seeks to exclude the expert report of Mitchell Gordon. Among other experiences in the corporate sector, Gordon previously served as CEO of several transportation

---

[1]     The Court granted summary judgment on Plaintiffs' related claim that Defendants breached Canter's contract. (ECF No. 119).

and logistics companies, as CFO of a SPAC and as a board member of two other SPACs. (ECF No. 114-1 at ¶¶ 5–9, Expert Report of Mitchell Gordon ("Gordon Report").) In his report, Gordon opines as to whether GigCapital's disclosures provided adequate and accurate disclosures of the risks, expenses and liabilities associated with its merger with Kaleyra, S.p.A., whether the disclosures adequately explained the risks to Kaleyra, Inc.'s ongoing operations after the merger and what steps he would expect a CFO to have taken if she had concerns about the adequacy of financial disclosures. (*Id.* at ¶ 1.)

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. According to that rule,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Rule 702 thus imposes a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up).

To assess reliability under Rule 702, a court must conduct a "flexible" inquiry into the "principles and methodology" underlying an expert opinion. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Here, Gordon would provide experiential rather than

scientific expert testimony. *See generally United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007) (explaining the difference between scientific and experiential expert testimony). His testimony "will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. Therefore, when evaluating the admissibility of his testimony, the Court must consider whether the testimony stems from "reliable principles and methods that are reliably applied to the facts of the case." *Id.*

Relevancy under Rule 702, in turn, requires that the expert's testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. While district courts must be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence, they must also remember that expert witnesses have the potential to "be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (internal citations omitted). "[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Id.*

### III.   ANALYSIS

The Court accepts that Gordon is "qualified as an expert by . . . experience" and may therefore "testify in the form of an opinion" if Defendants can establish by a preponderance of the evidence that his testimony meets the requirements of Federal Rule of Evidence 702. Defendants, however, have not carried this burden, and the Court therefore excludes Gordon's testimony.

By Defendants' account, Gordon offers four opinions in his report: (1) "Defendants provided proper disclosures, including disclosures on deal expenses as well as on risk factors;"

(2) "Defendants' '[d]isclosures regarding the forward share purchase agreements were adequate;'" (3) "Defendants' '[d]isclosures regarding risks to Kaleyra, Inc. as an ongoing entity were adequate;'" and (4) "A competent and/or experienced CFO, having concluded that the information to be included in a proxy statement was either inadequate or inaccurate, would not have permitted issuance of the proxy statement." (ECF No. 116 (Defs.' Opp.) at 3 (alterations in original).) The Court will address the first three opinions relating to the disclosures together, before turning to the fourth opinion.

### A.     Gordon's Opinions on the Disclosures

The Court excludes each of Gordon's first three opinions as to the propriety and adequacy of the disclosures at issue in the case. Defendants have failed to establish that Gordon bases his testimony "on sufficient facts or data," that he produces his opinions through "reliable principles and methods" or that his opinion would help the jury. Fed. R. Evid. 702.

Gordon's report lacks a thorough, clear explanation of how he arrived at his opinions in this area. From what the Court can discern, he appears to have reached his conclusions in part on the fact that, in his experience, "the disclosures of risks of a pending transaction in publicly filed SEC documents are typically as broad and complete as the lawyers, bankers and company executives connected with the filing determine are complete based on all reasonably available information." (Gordon Report at ¶ 23; *see also* ECF No. 115-2 (Gordon Dep.) at 160:23–161:12 ("I'm relying on the fact that I have a high degree of confidence that the legal and accounting firms that were advising the company would ask the right questions and gather the right type of information from the management team and would include that in the public filings.").) The mere fact that disclosures prepared by other professionals are usually complete provides little reliable guidance to Gordon, or to the jury, about the facts in this case.

4

Although Gordon does go on to reference the specific disclosures in this case, his analysis consists of superficial characterizations, summarizations and reproductions of documents to which the jury will presumably have access; for example, he counts up the number of times that the definite proxy statement refers to forward purchase share agreements and the number of pages detailing risk factors. (Gordon Report ¶¶ 24, 34.) Defendants fail to establish that such rudimentary arithmetic constitutes a reliable method by which to assess the adequacy of the disclosures. Even if it were, the jury could readily make such an assessment itself. *See E. Claiborne Robins Co., Inc. v. Teva Pharms. Indus., Ltd.*, 2022 WL 3710758, at *5 (E.D. Va. Feb. 23, 2022) ("Rule 702 permits only expert testimony that would aid the jury's understanding of the issues at hand, and a narrative of facts that the parties can establish using direct evidence does not serve that goal.").

Moreover, Gordon opines only on the disclosures' "adequacy" and not on the disclosures' "accuracy." (Defs.' Opp. at 9, 12.) That is, Gordon does not speak to whether the disclosures accurately estimated the expenses or correctly disclosed the features of the forward share purchase agreement. (*Id.*; *see also* Gordon Dep. at 160:13–22, 162:03–08 (confirming that he did not "validate" the numbers disclosed in the proxy statements).) According to Defendants, Gordon limited his opinion "to whether the disclosures encompassed and adequately identified the relevant and reportable categories of deal expenses" and whether the disclosures identified details relevant to the forward share purchase agreements. (Defs.' Opp. at 9, 12.) This fine distinction has a murky relationship with the ultimate issue of whether Plaintiffs had an objectively reasonable belief that Defendants' conduct constituted a violation of federal securities law and, as a result, has the potential to mislead the jury. As Gordon's testimony has limited probative value and appears more likely to confuse the jury than help it understand the

evidence, the Court exercises its discretion to exclude it.

Finally, the Court finds that the testimony's potential to waste time and lead to the needless presentation of cumulative evidence substantially outweighs any limited probative value that this testimony might have. *See* Fed. R. Evid. 403.

### B. Gordon's "Competent CFO" Opinion

The Court also excludes Gordon's opinion that "an experienced and/or competent CFO . . . would not have permitted issuance of the proxy statement" if she had "concluded that the information to be included in a proxy statement was either inadequate or inaccurate[.]"[2] (Gordon Report at 18.) Here again, Defendants have not met their burden of showing that Gordon followed reliable methods and principles. Gordon's opinion in this regard constitutes little more than speculation about what a reasonable CFO would or would not have done in Pulzone's position as CFO of Kaleyra S.p.A. To the extent that Gordon wishes to testify only on the measures that a CFO has available to her to express concerns about a company's conduct, such as the measures Gordon outlines in his report at ¶ 42(a)–(e), he may do so.[3] If the jury concludes from that information that Pulzone did not believe that the information contained in the proxy statements was inadequate or inaccurate, the jury may do so. But the conclusory

---

[2]  This section of Gordon's report contains additional opinions and speculation as to Pulzone's subjective beliefs during the transaction, as well as narrative facts which the parties could establish through direct evidence. Courts disfavor expert opinions regarding a party's subjective beliefs or state of mind. *See, e.g., In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig.*, 2021 WL 781682, at *13 (D. Md. Mar. 1, 2021) and cases cited therein. Given that Defendants do not attempt to defend these portions of Gordon's testimony in their briefing, the Court will exclude them without need for further discussion.

[3]  Contrary to the Plaintiffs' assertions, such a list need not map onto the Sarbanes-Oxley Act's enumeration of protected activity, because it may offer insight into whether Pulzone had a subjective belief that Defendants were violating federal security law.

6

statement that Gordon provides to the jury — that no reasonable CFO would have permitted issuance of the proxy statement — does not rest on sufficient data or apply a reliable method. Moreover, as to this portion of Gordon's report, the Court again finds that the danger of confusing the jury and potential to waste time substantially outweighs any limited probative value. The Court thus excludes the testimony under Federal Rules of Evidence 403 and 702.

As a final note, the Court would allow Gordon to provide the jury with background on technical terms, such as "forward purchase share agreement," or on general aspects of SPAC transactions and deal structures. However, in the exercise of the Court's case and trial management powers, the Court would disfavor allowing any witness to testify at trial solely to give the sort of background information that other already-testifying witnesses could address, of which the Court could take judicial notice or, alternatively, to which the parties could stipulate. If Defendants wish to call Gordon at trial to provide background testimony or to testify as to the options a CFO has to raise concerns about inadequate or inaccurate disclosures, they may seek the Court's leave to do so.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiff's Motion to Exclude (ECF No. 114).

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

\_\_\_\_\_/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date: June 27, 2024